Filed 8/2/23  P. v. Firth CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C097730 |
| Plaintiff and Respondent, | (Super. Ct. No. 62181707) |
| v. | |
| ANTHONY RYAN FIRTH, | |
| Defendant and Appellant. | |

After pleading no contest to one count of resisting an executive officer in July 2020, defendant Anthony Ryan Firth was granted a four-year term of probation.  The trial court subsequently revoked defendant's probation twice, based on two separate subsequent misdemeanor convictions for resisting a peace officer.  The court reinstated probation in 2021 but declined to do so in 2022 and imposed sentence of the middle term in custody for defendant's underlying 2020 offense.

1

On appeal from the 2022 imposition of sentence for his 2020 offense, defendant argues: (1) the trial court improperly relied on certain aggravating circumstances, including defendant's conduct while on probation, when selecting the middle term; (2) trial counsel was ineffective for failing to object on this basis; and (3) the trial court incorrectly calculated defendant's presentence credits. The Attorney General agrees with the final claim but disagrees as to the nature and extent of the error and seeks a limited remand.

As we next explain, defendant has forfeited any claims based on the alleged sentencing errors. Further, defendant fails to establish trial counsel's performance was deficient. Remand is required, however, for the limited purpose of recalculating credits.

We will remand for recalculation of credits and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying offense are undisputed; thus, we rely (as do the parties) on the probation officer's report for our limited factual recitation of the 2020 offense. On June 24, 2020, law enforcement in El Dorado County found defendant in possession of two open wine bottles and appearing to be under the influence of a controlled substance. Despite instructions to remain, defendant left the scene on foot and was located by officers, at which point he picked up a metal pipe, swung it in the officers' direction, and then threw it toward them. When the officers approached him, defendant threatened to kill them in several explicit ways.

On July 14, 2020, defendant pleaded no contest in El Dorado County Superior Court to one felony count of resisting an executive officer (Pen. Code, § 69)[1] and was granted four years of probation. Defendant's probation was subsequently transferred to Placer County.

---

[1] Further undesignated statutory references are to the Penal Code.

According to the probation report as well as the trial court's docket,[2] defendant's probation was revoked on November 10, 2021, and reinstated on November 18, 2021. On that same day, in a separate Placer County Superior Court case (case No. 62-182420), defendant was convicted of section 148, subdivision (a)(1), misdemeanor resisting a peace officer (the 2021 offense). The facts underlying the 2021 offense and resulting probation revocation and reinstatement are not included in the record provided to us.[3]

In June 2022, defendant was convicted in El Dorado County of misdemeanor resisting a peace officer, based (as was the 2020 offense) on his threatening bodily harm to law enforcement officers in Placerville. The trial court summarily revoked defendant's probation (that had been reinstated in November 2021) on June 20, 2022. Defendant subsequently admitted his 2022 section 148 conviction and the resulting violation of his probation in the underlying 2020 offense.

The trial court declined to reinstate probation, considering "defendant's initial grant of probation, the initial sentence, *the first violation of probation*, also the defendant's records." (Italics added.) In imposing the middle term sentence, the court stated it had "obligations to consider . . . the defendant's conduct and to note in this particular case, when there was a violation of probation related to the same underlying conduct that resulted in -- notwithstanding the fact that it was a misdemeanor admission, the defendant's comment that -- to officers, which he was apologetic for. But nevertheless, while on probation he told officers at the *Placer County* Police Department that he would hurt them, he would stab them, told officers he was going to kill them. And so that information is available to the Court." (Italics added.)

---

[2] We take judicial notice of the trial court's docket in the present case (Placer County Sup. Ct. case No. 62-181707). (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

[3] The parties' briefing does not discuss the 2021 offense and subsequent revocation and reinstatement of defendant's 2020 grant of probation.

The trial court also recognized that section 1170, subdivision (b)(6)(A) could apply in this case.[4] The court noted, "It appears from a probation report that that has been the experience for this particular defendant" and went on to consider "what factors outweigh the mitigating circumstances so that imposition of that lower term would be contrary to the interest of justice." The court found: "[T]he circumstances of the offense outweigh the mitigating circumstances. The defendant's conduct initially, the defendant's conduct thereafter, the proximity to this time, the defendant's record. He has felony convictions going back to 2014 and -- of concern to the Court is the more recent conviction including the conduct making references to violence, have a backdrop of an arrest for a battery in Placerville in 2016 and 2017, a [section] 245 [subdivision] (a)(4) with possible GBI, although the Court notes that no strike conviction was alleged. There was a felony conviction. He had 60 months['] probation. It appears thereafter, in 2018, he had a felony conviction and then -- that same time, perhaps, in that same case, he received a commitment to the California Department of Corrections and then resulting in the [Penal Code section] 69 and also noting a subsequent arrest after he was placed on probation. [¶] So taking all those factors into account, the Court does not find that imposition of that middle term would be contrary to the interest of justice. I want to -- balance the defendant's prior history and the circumstances of this particular offense, so the Court is imposing the two-year commitment pursuant to [section] 1170 [subdivision] (h)."

The trial court awarded defendant 466 days of presentence custody credit.

---

[4] Under section 1170, subdivision (b)(6), "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence."

Defendant timely appealed.  Defendant requested and was granted calendar preference in March 2023.  The case was fully briefed on May 16, 2023, and assigned to this panel shortly thereafter.  The parties waived argument and the case was submitted on July 25, 2023.

## DISCUSSION

### I

### *Sentencing Error and Forfeiture*

Defendant first contends the trial court considered improper factors when imposing the middle term.  More specifically, defendant argues:  (1) the court's consideration of defendant's conduct after having been initially placed on probation in 2020 ran afoul of California Rules of Court, rule 4.435(b)(1);[5] and (2) the court violated section 1170 by relying on aggravating circumstances that were not proven to a jury, stipulated to by defendant, or based on certified records.  Defendant concedes he failed to object on either basis at the time of sentencing.

The absence of a specific objection forfeits these issues on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 353.)  Defendant claims there was no meaningful opportunity to object because the trial court did not first issue a tentative ruling and did not pause for objections.  But a meaningful opportunity to object does not "require a tentative ruling in advance of the actual sentence" but instead merely requires "the opportunity to address the court on the matter of sentence and to object to any sentence or condition thereof imposed by the court."  (*People v. Zuniga* (1996) 46 Cal.App.4th 81, 84.)  Counsel clearly had a meaningful opportunity to object, as he addressed the court at length before sentence was pronounced as well as briefly afterward.

---

[5] Undesignated rule citations are to the California Rules of Court.

In reply, defendant raises several additional points not previously raised in the trial court, including that: (1) the trial court should not have considered the circumstances of defendant's initial arrest; and (2) the aggravating factors were required to be proven to a jury to satisfy the Sixth and Fourteenth Amendments to the United States Constitution. These arguments are also forfeited for lack of an objection in the trial court. (*People v. Scott, supra*, 9 Cal.4th at p. 353.) Further, arguments raised for the first time in reply are forfeited. (*People v. Taylor* (2020) 43 Cal.App.5th 1102, 1114.)

Defendant alternatively urges this court to exercise its discretion to reach the merits despite forfeiture. We decline to do so.

## II

### *Ineffective Assistance of Counsel*

Anticipating our conclusion that he claims are forfeited, defendant next argues his trial counsel provided ineffective assistance by failing to raise the claimed sentencing errors below. To establish a claim for ineffective assistance of counsel, defendant must show his counsel's performance was deficient and that he suffered prejudice as a result. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *Strickland v. Washington* (1984) 466 U.S. 668, 687-692.) If either element of the ineffective assistance of counsel analysis has not been proven, the defendant's claim of ineffective assistance fails. (*Strickland,* at p. 697.) We presume that "counsel's actions fall within the broad range of reasonableness, and [we] afford 'great deference to counsel's tactical decisions.' " (*Mickel,* at p. 198.)

As our Supreme Court has observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*People v. Mickel, supra*, 2 Cal.5th at p. 198.) This is because "[t]he record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively

6

unreasonable." (*Ibid.*) We will reverse only if there is affirmative evidence that counsel had no rational tactical purpose for an act or omission. (*Ibid.*) If the record on appeal sheds no light on why trial counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one or there could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) A defendant thus bears a difficult burden when asserting an ineffective assistance claim on direct appeal. (*Mickel*, at p. 198.)

Here, defendant has failed to show the absence of a satisfactory explanation for his trial counsel's failure to object to the alleged sentencing errors.

Defendant first argues his counsel's performance was deficient because he failed to bring rule 4.435 to the trial court's attention. Rule 4.435(b)(1) provides in relevant part that, upon revoking and terminating probation and imposing sentence, "[t]he length of the sentence must be based on circumstances existing at the time supervision was granted, and subsequent events may not be considered in selecting the base term . . . ." If the 2020 grant of probation had remained undisturbed, rule 4.435 would have prohibited consideration of defendant's conduct after he was placed on probation when determining the length of his sentence.

But the 2020 grant of probation did not remain undisturbed. As we have described in detail above, defendant's probation was revoked and reinstated in November 2021, after defendant admitted a violation for a section 148 conviction in Placer County. Rule 4.435(b)(1) allows consideration of circumstances *preceding a reinstatement* of probation in cases where a defendant's probation has previously been revoked and reinstated, as happened here. (*People v. Harris* (1990) 226 Cal.App.3d 141, 145, 147 [holding that the prior version of rule 4.435(b)(1) allows consideration of circumstances preceding a reinstatement of probation in cases where a defendant's probation has been revoked,

7

reinstated, and then once again revoked, as the reinstatement is a new grant of probation]; see also *People v. Black* (2009) 176 Cal.App.4th 145, 150-152.)

Here, defendant's 2020 grant of probation was first revoked on November 10, 2021, reinstated on November 18, 2021, and revoked again on June 20, 2022. As we have explained, at sentencing the trial court referenced defendant's "first violation of probation" and his threats made to officers in "Placer County." Further, when addressing the court prior to sentencing, the prosecutor referenced defendant's "[section] 148 [offense] from last year" (i.e., 2021) and defense counsel acknowledged the 2022 probation violation was defendant's "second violation."

Under rule 4.435(b)(1) and *Harris*, the sentencing court could properly consider defendant's conduct while on probation prior to November 18, 2021--during the period preceding reinstatement. Because the court's statements at sentencing could reasonably be interpreted as referencing the 2021 probationary conduct that gave rise to defendant's 2021 offense and revocation, it is not clear that defense counsel erred in failing to object to the court's consideration of defendant's conduct in threatening officers. The court was aware of defendant's 2021 probation revocation when it pronounced sentence; as we have set forth above, the 2021 section 148 conviction and corresponding probation revocation were referenced in the probation report, and the court distinctly referenced defendant's "*first* violation of probation" when declining to reinstate probation. Further, the court only referenced defendant's threats to officers from "Placer County," the location of the 2021 section 148 offense as opposed to the 2022 section 148 offense, which was in El Dorado County. And both attorneys acknowledged defendant's 2021 probation violation when arguing their respective positions immediately prior to the trial court's pronouncement of sentence.

Because defense counsel could have reasonably understood the trial court's reference to defendant's conduct pertained to the probationary period preceding the November 18, 2021, reinstatement of probation, i.e., the 2021 section 148 offense, which

8

would not be error (see *People v. Harris*, *supra*, 226 Cal.App.3d at page 145), counsel could have reasonably believed no objection was warranted. Defense counsel does not render ineffective assistance by failing to make objections that counsel reasonably determines are unmeritorious or futile. (*People v. Price* (1991) 1 Cal.4th 324, 387.) Thus, a reasonable explanation for defense counsel's challenged actions appears, and defendant has not satisfied his burden to show the absence of a satisfactory explanation.

Defendant's second argument similarly fails. He claims trial counsel was ineffective for not raising an objection pursuant to section 1170 when the trial court relied on aggravating circumstances that were not proven beyond a reasonable doubt, stipulated to by defendant, or based on certified records. But section 1170 only requires such proof when imposing the upper term--not the middle term. (See § 1170, subd. (b)(2).) Any objection by trial counsel on this point would have been meritless and futile.

Accordingly, on the present record, defendant has not established that his trial counsel's performance fell below an objective standard of reasonableness.

## III

### *Credits*

The parties agree that defendant is entitled to a minimum of one additional day of custody credit. Defendant further claims the trial court failed to award him conduct credits for two periods of custody. The Attorney General requests a limited remand with directions to resolve ambiguities in the credit calculation and award. Given the parties' respective positions and the state of the record before us, we agree a limited remand is appropriate for the trial court to ascertain whether defendant is entitled to further credit over the additional one day.

## DISPOSITION

The matter is remanded for the limited purpose of recalculation of credits and issuance of an amended abstract of judgment thereafter.  The judgment is otherwise affirmed.


                                        /s/
                                        Duarte, Acting P. J.


We concur:



        /s/
Renner, J.



        /s/
Horst, J.*

---

\* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.